**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larry CALDWELL, Defendant–
Appellant.**

No. 98–5213.

United States Court of Appeals,
Sixth Circuit.

Argued March 17, 1999.

Decided May 18, 1999.

Charles P. Wisdom, Jr. (argued), R. Michael Murphy (briefed), Asst. U.S. Attorneys, Lexington, KY, for Plaintiff–Appellee.

C. Mark Pickrell (argued and briefed), Nashville, TN, Larry Caldwell, London, KY, for Defendant–Appellant.

Before: JONES, CONTIE, and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Larry Caldwell was convicted of knowingly and intentionally manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1), and of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Caldwell argues on appeal that the district court impermissibly broadened the indictment by instructing the jury that it did not have to find that Caldwell manufactured the specific quantity of marijuana indicated in the indictment. We disagree and **AF-FIRM** Caldwell's conviction.

### I.

Three Kentucky State Police troopers, Smith, Russell, and Griffith, responding to a complaint about a possible abduction, paid a visit to Caldwell at his mobile home in the War Branch area of Leslie County, Kentucky, on June 19, 1995. They had been referred to this residence by Caldwell's sister-in-law. When they arrived, Caldwell was sitting in the doorway of the home. After a brief cordial discussion, Caldwell invited the troopers into the home. One of the troopers remained outside. Once inside, Smith asked Caldwell if he had any firearms present. Caldwell, who was sitting on a bed, replied in the affirmative, and reached under the mattress. Smith told Caldwell to stop and then retrieved a gun from under the mattress where Caldwell had been reaching. It was a .22 caliber Smith & Wesson revolver. The troopers then briefly searched the home.

While waiting outside, Griffith noticed some odd-colored plants nearby. Upon inspection, he determined that they were marijuana plants. He informed Smith and Russell. After finding a few more marijuana plants, they placed Caldwell under arrest and informed him of his rights. Finally, upon departing the area, the troopers noticed a large grouping of plants, which they also identified as marijuana. Trooper Griffith estimated the final count of plants to be in the neighborhood of 1,500.

In August 1995, Caldwell was indicted on three counts. Count One charged Caldwell with growing and producing marijuana in violation of 21 U.S.C. § 841(a)(1). Count Two charged Caldwell with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Count Three, which was later dismissed upon oral motion of the government, *see* J.A. at 28, charged Caldwell with using and carrying a firearm during and in relation to a drug crime in violation of 18 U.S.C. § 924(c)(1).

A jury convicted Caldwell on Counts One and Two, and the district judge sentenced him to 120 months in prison. Caldwell filed a timely notice of appeal. We have jurisdiction to hear Caldwell's appeal under 28 U.S.C. § 1291.

### II.

Caldwell argues that the district court impermissibly broadened the indictment under Count One in its instructions to the jury. Count One charged that Caldwell:

did knowingly and intentionally manufacture, that is, grow and produce, *more than 1000 plants* of marijuana, a Schedule I non-narcotic controlled substance

as listed under Title 21, United States Code, Section 812; all in violation of Title 21, United States Code, Section 841(a)(1).

J.A. at 11 (emphasis added). In the district court's instructions to the jury, however, the court stated:

> In the indictment, it is alleged that a particular amount or quantity of marijuana was being manufactured, or grown and produced, by the defendant. In order for you to find the defendant guilty of this charge, *the evidence in the case need not establish that the exact amount or quantity of marijuana was as alleged in the indictment,* but only that any amount or quantity of marijuana was, in fact, being manufactured, grown or produced by the defendant.

J.A. at 47 (emphasis added). Caldwell argues that after the grand jury returned an indictment with a specified number of marijuana plants, the district court violated his Fifth Amendment right to indictment by grand jury by informing the petit jury that the specific number of marijuana plants stated in the indictment need not be proven beyond a reasonable doubt.

We disagree with Caldwell. Caldwell's argument fails in light of the Supreme Court's opinion in *United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). In *Miller,* a grand jury returned an indictment charging Miller with three counts of mail fraud. The indictment alleged that Miller had defrauded his insurance company both by consenting in advance to the burglary upon which his claim for insurance proceeds was based, and by inflating the value of the loss to the insurer. The evidence at trial, however, concerned only the latter allegation. The Court held that, because proof that Miller lied about the value of the loss was enough to convict Miller under the mail fraud statute, and this charge was included in the indictment, there was no violation of the Fifth Amendment's grand jury guarantee. The Supreme Court wrote:

> As long as the crime and the elements of the offense that sustain the conviction

are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime. *Id.* at 136, 105 S.Ct. 1811.

■ Caldwell was charged with violating 21 U.S.C. § 841(a)(1). The elements of a violation of § 841(a)(1) for manufacturing marijuana are (1) the defendant knowingly or intentionally (2) manufactured marijuana. *See* 21 U.S.C. § 841(a)(1). Section 841(a)(1) does not require that any specific quantity of controlled substance be alleged or proved in order to sustain a conviction. Drug quantity is not an element of the offense. *See United States v. Moreno,* 899 F.2d 465, 472 (6th Cir.1990). *But see United States v. Rigsby,* 943 F.2d 631, 640 (6th Cir.1991) (criticizing this conclusion but following court precedent), *cert. denied,* 503 U.S. 908, 112 S.Ct. 1269, 117 L.Ed.2d 496 (1992). Quantity is an issue only in the penalty provisions of § 841(b). *See, e.g.,* 21 U.S.C. § 841(b)(1)(A)(vii) (creating a sentencing range of not less than ten years or more than life for manufacturing "1,000 or more marijuana plants regardless of weight").

A large body of precedent holds that drug quantity is an issue with respect to sentencing only and is to be determined after conviction by the district judge utilizing the preponderance of the evidence standard. *See Moreno,* 899 F.2d at 472–73. *See also United States v. Cisneros,* 112 F.3d 1272, 1282 (5th Cir.1997) (holding that the defendant could be convicted under § 841(a) after the government stipulated that only 931 kilograms of marijuana were seized, even though the indictment said over 1,000, because quantity is not an element of the offense); *United States v. Buford,* 108 F.3d 151, 154 (8th Cir.1997) (holding that quantity is not an element of a § 841(a) offense); *United States v. Dorlouis,* 107 F.3d 248, 252 (4th Cir.) (holding that quantity goes only to the sentence and not to guilt under § 841(a) and the government need not allege quantity in

the indictment to subject defendant to the enhanced penalties of § 841(b)), *cert. denied,* —— U.S. ——, 117 S.Ct. 2525, 138 L.Ed.2d 1025 (1997); *United States v. Jinadu,* 98 F.3d 239, 248 (6th Cir.1996) (holding that the district court erred by finding the quantity of drugs charged in the indictment controlling for purposes of § 841(b) enhanced penalties because quantity goes only to sentencing), *cert. denied sub. nom Lawal v. United States,* 520 U.S. 1179, 117 S.Ct. 1455, 137 L.Ed.2d 559 (1997); *United States v. Silvers,* 84 F.3d .1317, 1320–21 (10th Cir.1996) (holding that because quantity is not an element of the § 841(a) offense, a guilty plea when defendant is charged with possession with intent to distribute over 1,000 plants of marijuana is treated as a plea of guilty to § 841(a)(1) "with an express caveat that [the defendant] did not wish to stipulate to the amount of marijuana attributable to him for sentencing purposes"), *cert. denied,* 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997); *United States v. Gibbs,* 813 F.2d 596, 601 (3d Cir.) (holding that the indictment need not include a reference to § 841(b) to apply at sentencing the mandatory minimum sentences found in that section), *cert. denied,* 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987).

■ An indictment must "set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces." *See United States v. Martinez,* 981 F.2d 867, 872 (6th Cir.1992), *cert. denied sub nom. Escamilla v. United States,* 507 U.S. 1041, 113 S.Ct. 1874, 123 L.Ed.2d 493 (1993). An indictment tracking the language of the statute is sufficient "as long as 'those words ... fully, directly, and expressly ... set forth all the elements necessary to constitute the offense intended to be punished.'" *See United States v. DeAndino,* 958 F.2d 146, 147 (6th Cir.) (quoting *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)), *cert. denied,*

505 U.S. 1206, 112 S.Ct. 2997, 120 L.Ed.2d 874 (1992). In this case, the elements of a § 841(a)(1) violation were clearly set out in the indictment. Moreover, with respect to the specific-quantity language in the indictment, Caldwell cannot allege that the indictment did not provide sufficient notice of the charges against which he would have to defend. *See Miller,* 471 U.S. at 135, 105 S.Ct. 1811.[1]

■ Caldwell argues instead that once the government decided to include the specified quantity of marijuana plants in the indictment, it was then required to prove that amount. Instructing the jury that it need not find the drug quantity stated in the indictment beyond a reasonable doubt, contends Caldwell, constructively amended the grand jury's indictment in violation of the Fifth Amendment. Caldwell misunderstands the role of the indictment. As explained above, an indictment must set out the elements of the charged offense. Surplus language in the indictment not relevant to an element of the offense charged does not magically become an element of the offense upon appearing in the indictment.

■ As this court has explained:
A constructive amendment to the indictment occurs when "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of an offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment."

*United States v. Manning,* 142 F.3d 336, 339 (6th Cir.1998) (quoting *United States v. Hathaway,* 798 F.2d 902, 910 (6th Cir. 1986)). Caldwell does not argue that the jury instruction given allowed the jury to convict him of an offense other than a violation of § 841(a). His argument is not that any of the elements of § 841(a) were

---

1. Caldwell does not argue, for example, that the government introduced at trial evidence of marijuana plants that were not within the quantity of plants referenced in the indictment.

altered by the evidence or jury instructions, but rather he argues that the indictment added an element to the offense that was then improperly excised by the district court in its instructions to the jury. An indictment cannot change the required elements of a statutory offense. The quantity of marijuana plants included in the indictment here was not necessary to state an offense under § 841(a). "A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as 'a useless averment' that 'may be ignored.'" *Miller,* 471 U.S. at 136, 105 S.Ct. 1811 (citation omitted).

Caldwell argues that the grand jury might not have indicted him without the quantity-specific language, and thus he contends that allowing a conviction without requiring the petit jury to find beyond a reasonable doubt that he manufactured more than 1,000 plants of marijuana would be a violation of his Fifth Amendment right to indictment by a grand jury. This argument appears to be derived from *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), where the Supreme Court held that it is not for the court to decide whether a grand jury would have returned the indictment absent surplus language. *Id.* at 9, 7 S.Ct. 781. However, as the Court later made clear in *Miller,* "[t]o the extent *Bain* stands for the proposition that it constitutes an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it, that case has simply not survived." *Miller,* 471 U.S. at 144, 105 S.Ct. 1811.

Caldwell relies primarily on *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), for support. *Stirone* stands for the proposition "that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Id.* at 215–16, 80 S.Ct. 270. In *Stirone,* the defendant was convicted of interfering with interstate commerce in violation of the Hobbs Act. The indictment charged Stirone with the interference with the transport of sand into Pennsylvania. The government, however, introduced evidence of not only interference with sand importation but also interference with steel shipments from Pennsylvania into Michigan and Kentucky. The Supreme Court held that the district court impermissibly broadened the indictment when it allowed the government to introduce this evidence. Caldwell argues that the indictment here required the petit jury to find that he cultivated over 1,000 marijuana plants, and that deleting this quantity from the jury instructions broadened the indictment to allow for a conviction upon proof that he cultivated less than 1,000 plants as well. As the Supreme Court in *Stirone* pointed out, however, "there are two essential elements of a Hobbs Act crime: interference with commerce, and extortion. Both elements have to be charged. Neither is surplusage and neither can be treated as surplusage." *Id.* at 218, 80 S.Ct. 270. Once the indictment presents a factual basis for an element of a crime, the prosecution may not rest its proof of that element of the crime at trial on other facts. This is not what occurred here. As explained above, quantity is not an element of § 841. Caldwell's analogy to *Stirone* is therefore misplaced.[2]

---

**2.** A proper analogy to *Stirone* would occur if the indictment charged Caldwell with manufacturing marijuana plants, but the evidence introduced at trial referred to the manufacture of both marijuana and methamphetamine. Both marijuana and methamphetamine are controlled substances sufficient to support a § 841(a) conviction. Proof that what is being manufactured is a controlled substance, however, is an element of a conviction under § 841(a). Introducing evidence that a defendant was manufacturing methamphetamine, when the indictment charged the manufacturing of marijuana only, would be the type of broadening of an indictment that appeared in *Stirone.* Because such evidence would permit the petit jury to convict for manufacturing methamphetamine, and not manufacturing marijuana as charged in the indictment, such a hypothetical defendant's right to indictment by a grand jury would be violated.

Although we affirm Caldwell's conviction, we nevertheless pause to note our concern with respect to presenting to a petit jury indictments that include a specific drug quantity. Federal Rule of Criminal Procedure 7(c)(1) states that "[t]he indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." We recognize that an indictment should contain more than just an outline of the elements of the offense charged. "[T]he indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *See Martinez*, 981 F.2d at 872. Moreover, as indicated above, § 841(b)(1)(A)(vii) provides for a mandatory minimum sentence for the manufacture of more than 1,000 plants of marijuana.[3] Putting the defendant on notice in the indictment that he is being charged with a quantity of marijuana that may subject him to an enhanced penalty under § 841(b) at sentencing ultimately embraces the underlying notice function of the indictment.

Our concern, however, is that a petit jury, not empowered to determine quantity under § 841(a), may in some cases be influenced to reach a guilty verdict by its knowledge of a specific quantity of drugs stated in the indictment. If, for example, the government chose to introduce evidence at trial with respect to only a limited quantity of drugs, reserving for the sentencing hearing the task of proving a greater amount,[4] a specific quantity set out in the indictment and presented to the petit jury could have a prejudicial effect on the petit jury's determination of guilt. Although, as in this case, the district court can instruct the jury that, regardless of a

specific amount of drugs charged in the indictment, quantity is not an element of a § 841 offense, enumeration of a specific and large quantity of drugs in an indictment that is presented to the petit jury when evidence with respect to a smaller amount was presented at trial could influence the petit jury's evaluation of the evidence properly before it. Due to the fact that any prejudice resulting from the petit jury's knowledge of the specific amount charged in the grand jury's indictment might be very difficult to prove, we encourage the district court, in the interest of justice under these circumstances, to prevent specific drug-quantity language in the indictment from reaching the petit jury. The district judge could, for example, delete the specific quantity and quote the redacted indictment in the instructions to the petit jury instead of providing the petit jury with an unredacted indictment that includes the specific amount. Although in this case the district judge included the indictment with the instructions to the petit jury without redacting the drug quantity language, we see no possibility of prejudice here, and we will thus affirm Caldwell's conviction.

### III.

For the reasons stated above, we **AFFIRM** Caldwell's conviction.

---

3. The Presentence Investigation Report ("PSI") calculated a base offense level of 27 and a criminal history category of IV for Caldwell. The resulting guideline range for imprisonment was 100 to 125 months. The PSI applied § 841(b)(1)(A), however, to conclude that a minimum sentence of ten years, or 120 months, was required.

4. The government might resort to such a tactic to take advantage of the relaxed evidentiary rules of sentencing hearings. *See United States v. Silverman*, 976 F.2d 1502, 1508 (6th Cir.1992) (en banc), *cert. denied*, 507 U.S. 990, 113 S.Ct. 1595, 123 L.Ed.2d 159 (1993) (recognizing the "wide discretion allowed a trial judge in considering the evidence submitted at sentencing").