**UNITED STATES of America,
Plaintiffs–Appellees,**

v.

**Sergio SIFUENTES, Defendants–
Appellant,**

No. 00–2238.

United States Court of Appeals,
Sixth Circuit.

March 5, 2002.

Before JONES and COLE Circuit Judges; and GWIN, District Judge.*

OPINION

GWIN, District Judge.

With this appeal, we decide whether the trial court erred when, guided by the U.S. Sentencing Commission Guidelines ("Sen-

---

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

tencing Guidelines"), it sentenced Defendant Sergio Sifuentes to a 210–month term of imprisonment, a term exceeding the statutory maximum for Sifuentes's convictions under 21 U.S.C. §§ 841(a)(1) and 846 (2000). The defendant was convicted before the U.S. Supreme Court's decided *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), but sentenced after the decision. We review whether the trial court properly sentenced Defendant Sifuentes in light of his failure to object to the trial court's jury instruction that the quantity of drugs was not an element of the crimes charged. Additionally, we consider whether the trial court should be prevented from applying the Sentencing Guidelines when there is little question the quantity of drugs associated with Sifuentes warranted the 210–month sentence.

Finding no circumstances requiring us to notice plain error, we affirm the trial court's sentence and deny Defendant Sifuentes's appeal.

## I. Background

In January 2000, the grand jury proffered a two-count indictment against Defendant Sifuentes and the other defendants. Count 1 of the indictment charged the defendant and his fellow conspirators with conspiring to distribute marijuana, in violation 21 U.S.C. §§ 846 and 841(a)(1). The indictment alleged that the conspiracy occurred from early 1995 to about May 1998. Count 1 of the indictment alleged a

violation of 21 U.S.C. § 841(b)(1)(A)(vii),[1] the penalty provision for offenses involving at least 1000 kilograms of marijuana.

Count 2 of the indictment charged Sifuentes with possessing with the intent to distribute and the distribution of "approximately 1,000 pounds of marijuana" on or about May 28, 1996, in Kent County, Michigan, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii). (Joint Appendix at 39).

At his arraignment, the trial court told Defendant Sifuentes that he faced a sentence of ten years to life in prison under 21 U.S.C. § 841(b)(1)(A)(vii).

Sifuentes and two codefendants went to trial on the indictment. At trial, the government presented evidence that Sifuentes transported several loads of marijuana, totaling over 3800 pounds, to western Michigan. Regarding one of these transports, the government offered testimony that on May 28, 1996, Sifuentes possessed and transported a load of 1000 pounds of marijuana to Grand Rapids, Michigan. This load was the subject of Count 2 of the indictment.

The trial court submitted the case to the jury before the Supreme Court's *Apprendi* decision. When giving its final instructions, the trial court told the jury:

> The government is not required to prove any particular amount of marijuana as to the conspiracy charge or as to the distribution charge. Quantity is not

---

**1.** Subsection (b) of § 841 reads in relevant part:

> Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:
> (1)(A) In the case of a violation of subsection (a) of this section involving—
>
> . . . . .
>
> (vii) 1000 kilograms or more of a mixture or substance containing a detectable

> amount of marijuana, or 1,000 or more marijuana plants regardless of weight . . .
>
> . . . . .
>
> such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . .

21 U.S.C. § 841(b)(1)(A)(vii) (1999).

an element congress has made in these offenses. You'll recall that in the possession charge 1,000 pounds is alleged, but the Government does not have to prove 1,000 pounds.

(J.A. at 115–16).

This instruction conformed with this Court's precedent at that time. *See, e.g., United States v. Caldwell,* 176 F.3d 898, 900 (6th Cir.1999) ("Section 841(a)(1) does not require that any specific quantity of controlled substance be alleged or proved in order to sustain a conviction. Drug quantity is not an element of the offense."). *Defendant Sifuentes did not object to the instruction or ask the jury to determine the quantity of drugs involved.* On May 25, 2000, the jury found the defendant guilty of both counts of the indictment.

On June 26, 2000, the Supreme Court issued its opinion in *Apprendi.* In that decision, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490.

After the trial court received the verdict, it referred Sifuentes to the probation department for preparation of a presentence report. In its report, the probation department suggested "Mr. Sifuentes' criminal activity involved at least 1,360 kilograms (of marijuana)." (J.A. at 164). Because the drug amount was between 1000 and 3000 kilograms, the probation department recommended a base offense level of 32 under section 2D1.1(c)(4) of the Sentencing Guidelines. *See* U.S. Sentencing Guidelines Manual § 2D1.1(c)(4) (2000). The probation department's finding that Sifuentes's activity involved more than a 1000 kilograms of marijuana triggered a sentence of ten years to life in prison. *See* 21 U.S.C. § 841(b)(1)(A)(vii) (1999).

After receiving the presentence report, Sifuentes did not challenge the amount of marijuana. Instead, he argued that because there had been no jury determination of quantity, the trial court could sentence him to no more than five years on each count, the maximum sentence allowed under 21 U.S.C. § 841(b)(1)(D).

Responding to this argument, the government argued that Sifuentes never objected to the trial court's instruction that the jury should not determine the quantity of marijuana. Having failed to object, the government said the trial court should use plain error analysis. The government further argued that under plain error analysis the jury would have found beyond a reasonable doubt that the offenses involved at least 100 kilograms (220 pounds) of marijuana, the finding needed to raise the maximum sentence to forty years under 21 U.S.C. § 841(b)(1)(B)(vii). The government contended that any error was harmless.

At the sentencing hearing, the trial court agreed with the government's argument:

In applying *Neder [v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)] and *Apprendi* to the facts of this case, the question for the Court is whether the evidence of drug quantity is so overwhelming that no rational jury could have found other than that the defendant possessed with intent to distribute 100 kilograms or more of marijuana. The Pre–Sentence Investigator in this case calculated that the defendant possessed with intent to distribute at least 1,360 kilograms of marijuana. The basis for this calculation were [sic] several witnesses heard during trial who independently and consistently implicated defendant in several large deliveries, 1,000 pounds or more of marijuana.

Based upon the information the Court finds by a preponderance of the evidence that the quantity involved is 1,360 kilograms, and that the scoring is therefore proper. The Court also determines that the *Apprendi* error was harmless in that any reasonable jury would have found beyond a reasonable doubt a quantity of 100 kilograms or more had they been properly instructed by me or anyone else.

(J.A. at 106–07).

Having found that the quantity of drugs attributable to Sifuentes was more than 100 kilograms of marijuana, the trial court ruled that the sentencing range of imprisonment was five to forty years. The final Sentencing Guidelines range was 210 to 262 months. The trial court sentenced Sifuentes to concurrent terms of 210 months on each count.

## II.  Standard of review

■■■ Sifuentes preserved his objection to the trial court's instruction that quantity should not be determined by the jury by challenging the instruction at sentencing. *United States v. Candelario,* 240 F.3d 1300, 1304 (11th Cir.2001) ("A constitutional objection for *Apprendi* purposes is timely if a defendant makes the objection at sentencing."); *see also United States v. Strayhorn,* 250 F.3d 462, 467 (6th Cir. 2001). Having been preserved, we review the objection de novo. As Sifuentes is directly appealing his judgment of conviction in the federal system, we apply plain error analysis to errors not objected too at trial. *See Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).

## II.  Discussion

■■■ In *Apprendi,* the Supreme Court held that a criminal defendant's constitutional rights are violated when his prescribed statutory maximum penalties are increased by any fact, other than a prior conviction, that a jury does not find beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490. Because the trial court did not submit the issue of drug quantity to the jury for its determination, Sifuentes argues he must be resentenced to no more than the five-year statutory maximum sentence that applies to each count upon which the jury convicted him.

Defendant Sifuentes never challenged the trial court's instruction that the court, not the jury, would determine the quantity of marijuana. As a result, our review is for plain error. As described below, we find that the trial court's failure to submit the drug quantity to the jury was erroneous. However, we believe that any rational jury would have found, beyond a reasonable doubt, the same drug quantities found by the trial court judge. We conclude that Sifuentes is not entitled to plain error relief and we therefore affirm his sentence.

### A.  Application of Plain Error Analysis

As described, the trial court sentenced Sifuentes to 210 months imprisonment after finding, by a preponderance of the evidence, the drug quantity involved 1360 kilograms of marijuana. The trial court also found that its error in failing to require the jury to determine the quantity of marijuana "was harmless in that any reasonable jury would have found beyond a reasonable doubt a quantity of 100 kilograms or more had they been properly instructed." (J.A. at 107).

■■■ Under a plain error analysis:
before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity,

or public reputation of judicial proceedings.

*Johnson,* 520 U.S. at 466–67 (alterations in original) (internal quotation marks and citations omitted); *accord United States v. Olano,* 507 U.S. 725, 732–36, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Gibson v. United States,* 271 F.3d 247, 254–55 (6th Cir.2001).

■ Although the trial occurred before the *Apprendi* decision, *Apprendi* applies because Sifuentes's direct appeal was pending at the time of the decision. *See Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) ("[N]ew rule[s] for the conduct of criminal prosecutions [are] to be applied retroactively to all cases ... pending on direct review ..., with no exception for cases in which the new rule constitutes a 'clear break' with the past"); *see also Johnson,* 520 U.S. at 467; *United States v. Strayhorn,* 250 F.3d 462, 467 (6th Cir.2001) ("Because he is asserting a new constitutional rule that was decided while his case was pending, [the defendant] may properly assert this claim."). The trial court did not submit the issue of drug quantity to the jury. Therefore, the trial court violated *Apprendi* by sentencing Sifuentes beyond the statutory maximum of five years per count for drug offenses without a quantity finding. *See Johnson,* 520 U.S. at 467.

■ Having found that the trial court erred in declining to submit the quantity of drugs to the jury, we decide whether such error was plain. Under *Johnson,* an error is plain if the error is obvious "by the time of appellate consideration," even when "the law at the time of trial was settled and clearly contrary to the law at the time of appeal." *Id.* at 468. Under this standard,

the trial court's *Apprendi* violation was plain even though it conducted Sifuentes's proceedings correctly under the applicable law at the time.

Having shown that the trial court committed error and the error was plain, Sifuentes must next show the error affected his substantial rights. While plain error analysis governs our decision in this case, decisions interpreting harmless error under Rule 52 of the Federal Rules of Criminal Procedure will assist us in our determination.[2] The substantial rights inquiry under each provision is essentially identical, with the only distinction as to the burden of proof. *See United States v. Olano,* 507 U.S. 725, 734–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (stating the government has the burden of proof under the harmless error standard, while a defendant has the burden under the plain error standard); *United States v. Vazquez,* 271 F.3d 93, 100 (3d Cir.2001) (en banc). Both rules allow relief only the error affected the defendant's substantial rights. *See Olano,* 507 U.S. at 734.

To show that the trial court's error affected his substantial rights, Sifuentes must show "that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Id.; Gibson v. United States,* 271 F.3d 247, 261 (6th Cir.2001). Under plain error analysis, Sifuentes bears this burden. *Olano,* 507 U.S. at 734–35. Although an appellant does not need to show innocence, *see United States v. Baird,* 134 F.3d 1276, 1283 (6th Cir.1998), he will not show prejudice if there is overwhelming evidence against him on an issue, *see United States v. Maliszewski,* 161 F.3d 992, 1004–05 (6th Cir.1998).

**2.** Rule 52 provides in full:

(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

Fed.R.Crim.P. 52.

Therefore, in deciding whether the error affected Sifuentes's substantial rights, we look at whether we can say beyond a reasonable doubt that the sentence would have been the same absent the error that occurred when the trial court did not submit the drug quantity for the jury's determination. *See Neder,* 527 U.S. at 18–19. As described by the *Neder* Court:

> [Plain error review] asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. If the answer to that question is "no," holding the error harmless does not "reflec[t] a denigration of the constitutional rights involved."

*Neder,* 527 U.S. at 19 (second alteration in original) (quoting *Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)).

In *Neder,* the district court did not instruct the jury that materiality was an element of either the mail fraud or wire fraud charges faced by the defendant. The district court's instruction in *Neder* was consistent with existing precedent at the time of the trial. The jury convicted the defendant. While the defendant's direct appeal was pending, the Supreme Court held that the materiality was an element of offenses involving false statements in *United States v. Gaudin,* 515 U.S. 506, 522–23, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). In reviewing the defendant's conviction, the *Neder* Court applied a harmless error analysis to the omitted jury instruction, stating:

> We believe that where an omitted element is supported by uncontroverted evidence, this approach reaches an appropriate balance between "society's interest in punishing the guilty [and] the method by which decisions of guilt are to be made" ... In a case such as this one, where a defendant did not, and apparently could not, bring forth facts con-

testing the omitted element, answering the question whether the jury verdict would have been the same absent the error does not fundamentally undermine the purposes of the jury trial guarantee.

Of course, safeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error-for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding-it should not find the error harmless.

*Neder,* 527 U.S. at 18–19 (alteration in original) (internal citations omitted).

Therefore, to decide whether the error affected Sifuentes's substantial rights, we determine whether the error affected the outcome of his sentence. Against this backdrop, we look to whether it is clear beyond a reasonable doubt that the jury would have found Sifuentes possessed 100 kilograms or more of marijuana.

Under this standard, we find that a reasonable jury would have found Sifuentes possessed the amount of marijuana needed to justify his sentence. After examining the entire record, no remedy is available if we find the evidence was sufficiently conclusive to support the sentence actually imposed. However, an error affects a defendant's substantial rights if "the defendant contested the omitted element and raised evidence sufficient to support a contrary finding." *Neder,* 527 U.S. at 19; *United States v. Barbosa,* 271 F.3d 438, 460 (3d Cir.2001) (stating that the defendant's substantial rights were not affected by failing to submit the quantity of drugs to the jury because the defendant did not contest quantity at trial); *United States v. Bailey,* 270 F.3d 83, 89 (1st Cir.2001) (stating that failing to submit the drug quantity

to the jury was not harmless error when the defendant contested the disputed issue and there was evidence sufficient to support a contrary finding).

Sifuentes never challenged the quantity of drugs, either at trial or in this appeal, even though he had every incentive to do so. After the jury's verdict, the probation department prepared a presentence report. In that report, the probation department reported that "Mr. Sifuentes' criminal activity involved at least 1,360 kilograms (of marijuana)." (J.A. at 164). Although Sifuentes knew the drug quantity would have a major impact upon his sentence, he never objected that the probation department's finding of the drug quantity was inaccurate. Instead, he objected on the basis the jury had not made a special finding as to the amount of marijuana involved in the case.

Under section 2D1.1(c)(4) of the Sentencing Guidelines, Sifuentes faced a base offense level of 32 if he was associated with at least 1000 kilograms but less than 3000 kilograms of marijuana. If found responsible for less than 100 kilograms of mari-

juana, Sifuentes's base offense level would have fallen to 24. *See* U.S. Sentencing Guidelines Manual § 2D1.1(c)(8) (2000). Given Sifuentes's criminal history and his role in the offense,[3] he faced a sentencing range of 87 to 108 months if he was responsible for less than 100 kilograms of marijuana. In contrast, he faced a range of 210 to 262 months if the quantity of marijuana was more than 1000 kilograms. Because of the impact of drug quantity on his sentence, Sifuentes had every reason before *Apprendi* to challenge the quantity of marijuana the government accused him of possessing and conspiring to distribute. Yet, he made no objection to the amount attributed to him.

Sifuentes also never challenged the quantity of marijuana at trial. The evidence before the trial court shows Sifuentes's conduct involved far more than the 100 kilograms of marijuana necessary to subject him to the forty-year penalty provided by 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii).[4] The jury received evidence that Sifuentes brought several loads of marijuana, totaling over 3800 pounds,[5] to

3. The trial court found that Sifuentes was an organizer of the criminal activity under section 3B1.1(a) of the Sentencing Guidelines, causing it to add four levels for an offense level of 36.

4. Subsection (b) of § 841 provides in relevant part:

Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

[(1)](B) In the case of a violation of subsection (a) of this section involving—

.     .     .     .     .

(vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 100 or more marijuana plants regardless of weight;

.     .     .     .     .

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years . . .

21 U.S.C. § 841(b)(1)(B)(vii) (1999).

5. While the Sentencing Guidelines rely on kilograms for determining sentencing, the indictment and trial testimony report amounts in pounds. There are approximately 2.2 pounds per kilogram. Therefore, 3800 pounds is equal to approximately 1700 kilograms. Other conversions for quantities relevant to this decision are: 1000 pounds is approximately 450 kilograms, 900 pounds is approximately 400 kilograms, and 100 pounds is approximately 45 kilograms.

western Michigan. The jury convicted Sifuentes on Count 2 of the indictment, which expressly charged Sifuentes with possession with intent to distribute 1000 pounds of marijuana delivered to Grand Rapids, Michigan on or about May 28, 1996.

With regard to the May 28, 1996, load of marijuana, codefendant Kenneth Banasiak testified that Sifuentes delivered 1000 pounds of marijuana in a U–Haul truck to George Mohr's residence in Grand Rapids, Michigan.[6] Banasiak helped unload the marijuana into a garage at Mohr's residence. After stealing about 100 pounds of the marijuana during the night, Banasiak testified that he weighed the remainder the next day. The balance of the load that Sifuentes had delivered weighed 900 pounds.[7] The total load Sifuentes delivered weighed approximately 1000 pounds.

In addition, Sifuentes never suggested during the trial that the quantity of marijuana was less than 100 kilograms. Sifuentes does not show any prejudice resulting from the trial court's failure to require the jury to determine the drug quantity. As found by the trial court at the sentencing hearing, "the *Apprendi* error was harmless in that any reasonable jury would have found beyond a reasonable doubt a quantity of 100 kilograms or more had they been properly instructed by me or anyone else." (J.A. at 107). We

find that Sifuentes fails to show the trial court's error affected his substantial rights.

Our previous decisions support our determination of this case. In *United States v. King*, 272 F.3d 366 (6th Cir.2001), we examined whether the trial court's failure to submit drug quantity to the jury for its decision affected the defendant's substantial rights. As here, the trial court in *King* submitted the case to the jury before *Apprendi* but sentenced the defendant after the decision. Just like in the present case, the defendant raised no challenge to the quantity of drugs at trial.

We found in *King* that the trial court's determination of the drug quantity involved at sentencing did not impair the defendant's substantial rights:

> [W]e conclude that the substantial rights of the defendants were not affected by any *Apprendi* error which may have occurred during sentencing. Both defendants failed to object to the drug quantity determinations contained in the [presentence reports] despite being on notice that such determinations would affect the length of their sentences. Indeed, King merely objected that the amount in question was closer to 300 grams of actual methamphetamine rather than one kilogram. Moreover, it was the undisputed testimony of a forensic

---

**6.** Banasiak testified at trial:

A: Sergio [Sifuentes] came over in a U–Haul with 1,000 pounds.

   .     .     .     .     .

Q: And what was going on when you got there?

A: When I got there, we unloaded the U–Haul and we stored it in George Moore's [Mohr's] garage.

(J.A. at 96–97).

**7.** Banasiak testified at trial:

Q: So what happened the next day?

A: Well, the next day we had weighed it all out.

Q: Who weighed it out?

A: Me, Armando, Sergio [Sifuentes] and his friend.

Q: And what did the weight turn out to be?

A: It was 1,000 pounds, but the night before we had stole like 100 pounds of it.

   .     .     .     .     .

A: The night before, me and Armando, we had weighed it all out and we took 100 pounds off the top. And the next day it was 900 pounds.

(J.A. at 98–99).

chemist that one package contained 82.8 grams of actual methamphetamine, an amount above the 50 gram amount needed to trigger the defendants' sentences under the applicable statutes. We therefore conclude that any errors in sentencing failed to affect the defendants' substantial rights.

*King*, 272 F.3d at 379–80 (internal citation omitted).

For support of its holding, *King* relied upon *United States v. Stafford*, 258 F.3d 465 (6th Cir.2001). In *Stafford*, the defendant pleaded guilty to possession with intent to distribute cocaine. We found in *Stafford* that the defendant's admissions belied any claim the lesser standard of proof used by the trial court to resolve the uncontested factual issue disadvantaged him:

> Defendant failed to present any evidence, objection, or argument before the District Court that might cast any doubt, reasonable or otherwise, on the Government's assertion that his drug offense involved crack cocaine. Thus, a heightened standard of proof would not have altered the sentencing court's resolution of this uncontested factual issue.

*Stafford*, 258 F.3d at 476.

We went on to contrast *King* with the background presented in *United States v. Strayhorn*, 250 F.3d 462 (6th Cir.2001). In *Strayhorn*, the defendant pleaded guilty to conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 841 and 846. He nevertheless consistently denied responsibility for the full amount (188 kilograms) of marijuana that the government attributed to him as relevant conduct. In *Strayhorn*, we reversed, finding that the trial court failed to determine the quantity of marijuana attributable to the defendant beyond a reasonable doubt. *Strayhorn*, 250 F.3d at 470–71.

Other circuits have reached the same conclusion when presented with the issue of the present case. *See, e.g., Vazquez*, 271 F.3d at 104 (finding that the error did not affect the defendant's substantial rights when the reviewing court is "confident that [the defendant's] sentence would have been the same had the jury made the drug quantity finding"); *United States v. Duarte*, 246 F.3d 56, 62–64 (1st Cir.2001) (holding that an indictment lacking any reference to a specific quantity of drugs did not affect the defendant's substantial rights because the defendant admitted to a quantity of drugs in a plea agreement); *United States v. Pease*, 240 F.3d 938, 943–44 (11th Cir.2001) (same).

Even if Sifuentes had shown a violation of his substantial rights, he would not be entitled to relief. We only grant plain error review "if the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467 (internal quotation marks and citation omitted). "Rule 52(b) is permissive, not mandatory." *Olano*, 507 U.S. at 735; *see also United States v. Barajas–Nunez*, 91 F.3d 826, 830 (6th Cir. 1996) ("Courts of appeals have authority to correct plain errors, but are not required to do so."). Thus, it remains within our discretion to notice a plain error. *See Olano*, 507 U.S. at 735–36. Sifuentes does not show that such exercise of our discretion is warranted.

In *Johnson*, the Supreme Court found that plain error relief is unavailable when evidence of an element wrongly taken from a jury is overwhelming. *See Johnson*, 520 U.S. at 470. In such a circumstance, "there is no basis for concluding that the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (alteration in original).

As described above, at a minimum, the trial evidence showed that Sifuentes transported more than 1000 pounds of marijuana to the Michigan area. The government

presented overwhelming evidence that the quantity of drugs justified Sifuentes's sentence. While Sifuentes disputed that he participated in the conspiracy, he never challenged the 1000 pounds of marijuana involved in the May 28, 1996, shipment to Mohr's residence in Grand Rapids. Having believed the government's evidence that Sifuentes delivered marijuana, a rational jury would have found that Sifuentes conspired to possess or distribute no less than 1000 pounds of marijuana.

Given this evidence, Sifuentes presents no plausible argument as to how allowing his sentence to stand would impinge upon the fairness, integrity, or public reputation of the judicial proceedings. In fact, the opposite is true. A reversal would undermine the fairness, integrity, and public reputation of this Court should Sifuentes receive a windfall because the jury convicted him before the *Apprendi* decision, but the trial court sentenced him afterwards.

In similar circumstances, other circuits have found no negative affect upon a court's integrity by failing to notice error in these circumstances. *See, e.g., United States v. Terry,* 240 F.3d 65, 74 (1st Cir. 2001) ("It is not possible to find that the defendant was prejudiced by the unobjected-to failure of the trial court to submit to the jury the question of whether or not [his] offenses involved 50 or more grams of cocaine base. Nor would we ... find any miscarriage of justice."); *United States v. Barbosa,* 271 F.3d 438, 460 (3d Cir.2001) ("Even if Barbosa could somehow satisfy the third plain error prong, the *Apprendi* violation here did not seriously affect the fairness, integrity, or public reputation of judicial proceedings."); *United States v. Promise,* 255 F.3d 150, 163–64 (4th Cir. 2001) (en banc) (stating that "[m]ost importantly, at sentencing [the defendant] did *not* contest the quantity of drugs the presentence report recommended be attributed to him, nor did he dispute the

finding by the district court that he should be held accountable for more than 1.5 kilograms of cocaine base ..." and further concluding "[i]t would be a miscarriage of justice to allow him to avoid a sentence for the aggravated drug trafficking crime that the evidence overwhelmingly demonstrates he committed."); *United States v. Miranda,* 248 F.3d 434, 446 (5th Cir.2001) ("Considering the evidence in the record and the evidence available to the government should the case be retried, we conclude that the error, though plain, did not seriously affect the fairness, integrity or public reputation of judicial proceedings.") (internal quotation marks and citations omitted); *United States v. Martinez,* 258 F.3d 582, 586 (7th Cir.2001); *United States v. Wilson,* 244 F.3d 1208, 1220 n. 7 (10th Cir.2001); *United States v. Swatzie,* 228 F.3d 1278, 1284 (11th Cir.2000).

In light of the undisputed evidence of drug quantity attributable to Sifuentes, the fairness, integrity, or public reputation of judicial proceedings are not seriously affected even though an *Apprendi* violation occurred in his case.

## IV. Conclusion

Because of the timing of the *Apprendi* decision, the trial court committed plain error by instructing the jury not to determine the drug quantity attributable to Sifuentes. Nonetheless, we find that the error did not impair Sifuentes's substantial rights because it did not prejudice him. We further find that failing to notice the error does not impair the fairness and integrity of this Court.

The judgment of the U.S. District Court for the Western District of Michigan is AFFIRMED.